IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

| | |
|---|---|
| JOHN WAHRMUND d/b/a<br>WAHRMUND FARMS | PLAINTIFF |
| v. Case No. 4:16-cv-137-KGB | |
| TERRY BUSCHMAN, RYAN BUSCHMAN, and<br>CATTLE CONNECTIONS, LLC | DEFENDANTS |
| AND | |
| TERRY BUSCHMAN; and<br>RYAN BUSCHMAN | COUNTER-CLAIMANTS |
| v. | |
| JOHN WAHRMUND d/b/a<br>WAHRMUND FARMS | COUNTER-DEFENDANT |
| CATTLE CONNECTIONS, LLC | CROSS-DEFENDANT |

**ORDER**

Before the Court is Plaintiff/Counter-defendant John Wahrmund d/b/a Wahrmund Farms' ("Wahrmund") motion to dismiss the Texas Deceptive Trade Practices Act ("TDTPA") counterclaim of Defendant/Counter-claimants Terry Buschman and Ryan Buschman (collectively the "Buschmans") (Dkt. No. 28). The Buschmans filed a response to the motion to dismiss (Dkt. No. 32). For the following reasons, Wahrmund's motion to dismiss the Buschmans' TDTPA counterclaim is granted (Dkt. No. 28).

I. **Factual And Procedural Background**

John Wahrmund operates Wahrmund Farms, a cattle farm in Conway County, Arkansas (Dkt. No. 2, ¶ 7). In order to expand his business, Wahrmund entered into discussions with Cattle Connections, LLC ("Cattle Connections"), a Missouri limited liability company that connects

cattle owners with businesses capable of raising cattle (*Id.*, ¶¶ 4, 9). On November 19, 2014, Wahrmund entered into a contract with Cattle Connections for the care of cattle owned by Ryan Buschman, a resident of Perryton, Texas (*Id.*, ¶¶ 3, 11).

On December 10, 2014, Wahrmund entered into another contract with Cattle Connections, this time for the care of cattle owned by Terry Buschman (doing business as Buschman Ranch) (*Id.*, at 23). Terry Buschman is a resident of Spearman, Texas (*Id.*, ¶ 2). These two contracts (collectively referred to as the "Producer Contracts") provide that Wahrmund would be paid $1.10 per cow/bull per day by the Buschmans, via Cattle Connections (*Id.*, ¶ 12). In return, Wahrmund was to provide food, water, and other necessities for the cattle (*Id.*). Additionally, Wahrmund was to be reimbursed for necessary expenses incurred during the care of the cattle (*Id.*, ¶ 13).

The agreed-upon number of cattle were delivered to Wahrmund's cattle farm from Texas (Dkt. No. 2, ¶ 17). At the time of delivery, Wahrmund allegedly informed Ryan Buschman that the pregnant heifers were unusually small and young and warned Ryan Buschman that it was unwise to brand the heifers at that time (*Id.*, ¶¶ 18-19). Wahrmund insists that Buschman was unconcerned about this risk, so the heifers were branded, notwithstanding the alleged risk (*Id.*, ¶ 19).

According to Wahrmund, several mishaps occurred that led to a higher than expected death rate among the cattle. First, the premature birth of many calves in December 2014 resulted in unforeseen cattle deaths (*Id.*, ¶ 21). Second, central Arkansas allegedly experienced flooding that may have harmed the cattle (*Id.*, ¶¶ 24-25). Finally, on or about January 24, 2015, an unknown number of the calves were stolen and never recovered (*Id.*, ¶ 26; Dkt. No. 22, ¶ 5).

In response to the cattle theft, Ryan Buschman travelled to Wahrmund's property to inspect the cattle (*See* Dkt. No. 22, ¶ 5). According to the Buschmans, "[u]pon arrival, Ryan learned of

the poor health of their cattle." (*Id.*, ¶ 5). The Buschmans blame the poor health of the cattle on Wahrmund's "failure to provide adequate treatment, food, nourishment, and veterinary services" to the cattle, as well as his failure to "use ordinary care" while unloading the cattle (*Id.*, ¶ 6). The Buschmans also argue that Wahrmund hid the cause of the cattle deaths (*Id.*, ¶ 7).

On June 5, 2015, Cattle Connections informed Wahrmund that Ryan and Terry Buschman had decided to remove their cattle from his farm (Dkt. No. 2, ¶ 27). On June 25, 2015, the Buschmans removed some of their cattle from Wahrmund's farm, though approximately 360 of their cattle remained on Wahrmund's farm (*Id.*, ¶ 28).

On January 14, 2016, Cattle Connections and the Buschmans threatened legal action against Wahrmund (*Id.*, ¶ 32). The next day, Ryan Buschman collected the approximately 360 cattle remaining at Wahrmund's farm (*Id.*, ¶¶ 29-30). Wahrmund presented an invoice to Ryan Buschman that same day, but Buschman was allegedly unable to satisfy the invoice (*Id.*, ¶ 30). Instead, Buschman drafted a handwritten note that states, "Buschman Rauches [sic] will wire money for feed bill on 1-15-16 for $40,903.20." (*Id.*, at 27). Wahrmund alleges that this amount was never paid.

On February 10, 2016, Wahrmund filed a complaint against Cattle Connections, LLC, and the Buschmans in the Circuit Court of Conway County, Arkansas. Wahrmund's complaint asserts claims of breach of contract, unjust enrichment, violations of the Arkansas Deceptive Trade Practices Act, intentional interference with a contract, and fraud and deceit (Dkt. No. 2). On March 11, 2016, the Buschmans removed the lawsuit to this Court (Dkt. No. 1). On April 25, 2017, the Buschmans filed multiple counterclaims against Wahrmund (Dkt. No. 22). Among their counterclaims, the Buschmans assert that Wahrmund violated the TDTPA (*Id.*, ¶¶ 33-39). Specifically, in their TDTPA counterclaim, the Buschmans allege that Wahrmund failed to

3

disclose the quality of his services, falsely represented that he provided care for the cattle, and falsely represented the quality of his services (*Id.*, ¶ 35).

On May 5, 2017, Wahrmund filed his answer to the Buschmans' counterclaims (Dkt. No. 27). Wahrmund's present motion to dismiss the Buschmans' TDTPA counterclaim was filed on May 10, 2017 (Dkt. No. 28). The Buschmans filed their response to Wahrmund's motion to dismiss on May 24, 2017 (Dkt. No. 32).

**II.     Standard Of Review**

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a "complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Braden v. Wal-Mart Stores, Inc.,* 588 F.3d 585, 594 (8th Cir. 2009) (quoting *Ashcroft v. Iqbal,* 566 U.S. 662, 678 (2009)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 588 F.3d at 678. In making this determination, the court must draw all reasonable inferences in favor of the nonmoving party. *Crooks v. Lynch,* 557 F.3d 846, 848 (8th Cir. 2009). "When ruling on a motion to dismiss, the district court must accept the allegations contained in the complaint as true and all reasonable inferences from the complaint must be drawn in favor of the nonmoving party." *Young v. City of St. Charles*, 244 F.3d 623, 627 (8th Cir. 2001).

When considering a motion to dismiss under Rule 12(b)(6), the court generally must ignore materials outside the pleadings, but it may consider matters of public and administrative record referenced in the complaint, as well as materials that are "necessarily embraced by the pleadings." *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999). The court may also consider documents referred to in a complaint and central to a plaintiff's claim without converting

4

the filing to a motion for summary judgment. *See Nixon v. Coeur D'Alene Tribe*, 164 F.3d 1102, 1107 (8th Cir. 1999).

## III. Discussion

Wahrmund moves to dismiss the Buschmans' TDTPA counterclaim on two grounds: (1) Texas law does not apply to this litigation and (2) even if Texas law does apply, the TDTPA claim is barred by the statute of limitations (Dkt. No. 28, ¶¶ 2, 4). In their timely response, the Buschmans argue that Wahrmund's motion to dismiss should be denied because: (1) Texas law applies to their counterclaims, (2) Texas has personal jurisdiction over Wahrmund, and (3) their TDTPA counterclaim is timely because the statute of limitations was tolled (Dkt. No. 32, at 2-4).

### A. Conflict Of Laws

The parties disagree about which state's law—Arkansas or Texas—applies to the Buschmans' claims against Wahrmund. The Court finds that Arkansas law applies to the Buschmans' claims, including the TDTPA claim. Accordingly, the Buschmans' TDTPA claim must be dismissed.

The Buschmans argue that Texas law must govern their counterclaims because the Producer Contracts include an express choice of law provision that requires the use of Texas law (Dkt. No. 32, at 2). The putative choice of law provision states:

> Should there be any form of litigation between Cattle Connections, LLC and any parties, it is understood that the litigations will take place in the county of residence of Cattle Connections, LLC.

(Dkt. No. 2, at 19, 24).

Arkansas courts recognize and enforce valid express choice of law provisions contained in contracts. *Ark. Appliance Distrib. Co. v. Tandy Electronics, Inc.*, 730 S.W.2d 899, 900 (Ark. 1987) (applying Texas law where contract clearly stated that Texas law would control). Choice of law

5

provisions are, however, different from forum selection clauses. *See Buffington v. Diamond Transport & Drilling, LLC*, 2011 Ark. App. 76, at *1-2 (Ark. App. 2011) (finding that the parties agreed to apply Louisiana law, but did not agree on a venue). This provision of the Provider Contracts is a forum selection clause, not a choice of law clause. The provision states that "any form of litigation" between the parties to the Producer Contracts "will take place" in Cattle Connections' county of residence (Dkt. No. 2, at 19, 24). The provision is silent on which law the forum court is to apply. Accordingly, the Producer Contracts do not contain an express choice of law provision.[1]

In lieu of an express choice of law provision, the Court must conduct a conflict of laws analysis. Since this is a diversity action, the Court must apply the substantive law of the forum state, including its conflict of laws rules. *Nursing Home Consultants v. Quantum Health Servs.*, 926 F. Supp. 835, 841 (E.D. Ark. May 20, 1996); *see Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 78 (1938). Arkansas is the forum state (Dkt. No. 16, at 11). Arkansas courts apply different choice of law tests depending upon the type of claim at issue. A claim for misleading and deceptive acts under the TDTPA sounds in tort. *A.L.T. Corp. v. Small Business Admin.*, 801 F.2d 1451, 1462-63 (5th Cir. 1986) (citing *Taylor v. Administrator of the SBA*, 722 F.2d 105, 109 (5th Cir. 1983)).

In tort cases, Arkansas considers five factors to determine which state's law applies: (1) predictability of results; (2) maintenance of interstate and international order; (3) simplification of the judicial task; (4) advancement of the forum's governmental interests; and (5) application of the better rule of law. *Tyler v. Alltel Corp.*, 265 F.R.D. 415, 425 (E.D. Ark. Feb. 23, 2010).

---

[1] The Court notes that Cattle Connections is organized under Missouri law, not Texas law.

Predictability of results, the first factor, is "most relevant when parties have expectations about the applicable law, such as in consensual transactions where people should know in advance what law will govern their act, but has less relevance in cases such as accidents when the parties could not reasonably have such expectations." *Nw. Airlines, Inc. v. Astraea Aviation Servs., Inc.*, 111 F.3d 1386, 1394 (8th Cir. 1997). "The consideration here is the idea that a decision following litigation on a given set of facts should be the same regardless of where the litigation occurs in order to prevent forum shopping." *Schubert v. Target Stores, Inc.*, 201 S.W.3d 917, 922 (Ark. 2005). Here, the Buschmans may have expected Texas law to apply. The Buschmans are domiciled in Texas (Dkt. No. 2, ¶¶ 2-3). The cattle in question originated in Texas (*Id.*, ¶ 17). On the other hand, when Wahrmund contracted with Cattle Connections, Cattle Connections was a Missouri limited liability company. Thus, under the forum selection clause, Wahrmund may have originally expected to litigate in Missouri. Alternatively, since the Producer Contracts omit a choice of law clause, Wahrmund may have expected Arkansas law to govern, as the cattle were delivered to and housed in Conway County, Arkansas. As such, Arkansas, Texas, and Missouri law each have a potential claim to this case. Weighing these facts, the Court concludes that it was predictable that a transaction involving cattle farming in Conway County, Arkansas, would be governed by Arkansas law. Thus, this factor favors applying Arkansas law.

The second factor—maintenance of interstate order—requires a court to assess whether its decision will encourage forum shopping. *Nw. Airlines*, 111 F.3d at 1394. The court must therefore determine which state has the most substantial contacts with the facts of this case. *Id.* Here, Arkansas has substantial contacts with the case. The Buschmans do not contest that Wahrmund is located in Arkansas, the cattle that are the subject of the lawsuit were delivered to Arkansas, the alleged injuries to the cattle occurred in Arkansas, and the alleged misrepresentations by

Wahrmund occurred in Arkansas (Dkt. No. 22, ¶¶ 2, 5-10). Texas' only connection to this matter is that the Buschmans are domiciled there (Dkt. No. 2, ¶¶ 2-3). ). The only connection to Missouri is that, when Wahrmund contracted with Cattle Connections, Cattle Connections was a Missouri limited liability company (*Id.*, ¶¶ 4, 9). Accordingly, this factor favors applying Arkansas law.

The third factor, simplification of the judicial task, "is not a paramount consideration, because the law at issue does not exist for the convenience of the court that administers it, but for society and its members." *Schubert*, 201 S.W.3d. at 922-23. The Court is capable of applying Arkansas, Texas, or Missouri law.

The fourth factor, advancement of the forum's interests, considers Arkansas' governmental interests and the relative interests of Texas and Missouri. *See Nw. Airlines*, 111 F.3d at 1394. "A state's governmental interest in a choice-of-law case is discoverable by (a) identifying the factual contacts, which the litigated transaction had with that state, then (b) determining whether those contacts give rise to real reasons (socioeconomic or political justifications) for applying the state's law to litigated issues in the case." *Am. Fire & Cas. Co. v. Hegel*, 847 F.3d 956, 962 (8th Cir. 2017). As stated above, Arkansas has substantially more contacts than Texas or Missouri to the case at hand. Moreover, Arkansas has a governmental interest in the regulation of conduct that occurs within its borders. Texas and Missouri also have an interest in protecting the rights of their residents, but as the preponderance of the events giving rise to the Buschmans' counterclaim occurred in Arkansas, the fourth factor leans in favor of Arkansas law.

The Arkansas Supreme Court has held that Arkansas law is the better rule of law where it does not deprive the injured person of their day in court. *Tyler,* 265 F.R.D. at 427. Here, Arkansas, Missouri, and Texas have acts that protect consumers against deceptive trade practices. *See* Ark. Code Ann. § 4-88-101 *et seq.*; Mo. Ann. Stat. § 407.020; Tex. Bus. & Com. Code § 17.565. Both

Arkansas and Missouri have a five-year statute of limitations for deceptive trade practices while Texas has a two-year limitations period. *See* Ark. Code Ann. § 4-88-115; Tex. Bus. & Com. Code § 17.565; *Ball v. Friese Const. Co.*, 348 S.W.3d 172, 176 (Mo. Ct. App. 2011) (noting that five-year statute of limitations applies to violations of the Missouri Merchandising Practices Act). Accordingly, actions that may be barred in Texas would not be barred in Arkansas or Missouri. Because the consumer protection laws of Texas, Arkansas, and Missouri are not obviously "better" than one another in this case, this consideration does not favor either state.

Given that three of the five factors favor Arkansas law, and the remaining factors favor no state, the Court finds that Arkansas law should govern the Buschmans' counterclaims. Therefore, Texas law does not apply to the Buschmans' TDTPA counterclaim, and the Court dismisses the TDTPA counterclaim.

### B. Personal Jurisdiction

The Buschmans argue that their TDTPA counterclaim should not be dismissed because Texas has personal jurisdiction over Wahrmund (Dkt. No. 32, at 2-3). The claims in this case will be decided in this Court, not a court sitting in Texas (*See* Dkt. No. 16, at 11). Only the forum court must have personal jurisdiction over the parties. None of the parties have briefed the issue of whether Arkansas has personal jurisdiction over the parties to this matter. Accordingly, the question is not whether Texas has personal jurisdiction over Wahrmund, but whether this Court will apply Arkansas or Texas law to the Buschmans' claims. As discussed above, Arkansas law governs the Buschmans' counterclaims. Whether a court in Texas has personal jurisdiction over the parties is immaterial.

### C. Statute Of Limitations

Assuming, *arguendo*, that Texas law does apply to the Buschmans' counterclaims, Wahrmund asserts that the Buschmans' TDTPA counterclaim—filed on April 25, 2017—is barred by the statute of limitations (Dkt. No. 28, ¶ 3). All actions under the TDTPA "must be commenced within two years after the date on which the false, misleading, or deceptive act or practice occurred or within two years after the consumer discovered or in the exercise of reasonable diligence should have discovered the occurrence of the false, misleading, or deceptive act or practice." Tex. Bus. & Com. Code § 17.565. As for the discovery rule, "[t]he DTPA explicitly incorporates the language of the discovery rule," but the two judicially-created doctrines of inherent undiscoverability and objective verifiability do not apply to TDTPA claims. *LaGloria Oil & Gas Co. v. Carboline Co.,* 84 S.W.3d 228, 238 (Tex. App. 2001). Instead, the TDTPA explicitly establishes a 180-day limit on tolling for fraudulent concealment. Tex. Bus. & Com. Code § 17.565; *Gonzales v. Sw. Olshan Found. Repair Co., LLC*, 400 S.W.3d 52, 58 (Tex. 2013).

Wahrmund states that the statute of limitations should be calculated from the dates that he, the Buschmans, and Cattle Connections entered into the Producer Contracts in November and December 2014 (Dkt. No. 29, at 4). Wahrmund further states that the statute of limitations should be calculated at the time the transaction was entered into because the Buschmans did not plead the "discovery" portion of the TDTPA (*Id.*). In the alternative, Wahrmund argues that, even if the Court considers the "discovery" provision of the statute, the cause of action is not saved because the Buschmans learned of the poor health of their cattle in February, 2015, "at the latest." (*Id.*). Wahrmund states that, because the Buschmans would have been aware of all of the facts associated with the counterclaim by February 2015, the statute of limitations expired two years later in February 2017 (*Id.*).

The Buschmans disagree, stating that the statute of limitations should be calculated from January 2016, the date when the Buschmans discovered the exact scope of their cattle loss (Dkt. No. 32, at 4). The Buschmans cite to the doctrine of fraudulent concealment, stating that Wahrmund's final misrepresentation should control because he had the opportunity to perform the contract until January 2016 (*Id.*) ("only then did his misrepresentations and lies come to fruition"). Moreover, the Buschmans assert that the injury to the cattle was undiscoverable, and the statute of limitations was tolled until the Buschmans learned of the cattle deaths in January 2016 (*Id.*, at 5).

TDTPA claims accrue on the date a consumer should have, in the exercise of reasonable diligence, discovered the wrongful acts or omissions of a contractor. *J.M. Krupar Const. Co., Inc. v. Rosenberg*, 95 S.W.3d 322, 331 (Tex. App. 2002). Once a claimant "learns of a wrongful injury, the statute of limitations begins to run even if the claimant does not yet know 'the specific cause of the injury; the party responsible for it; the full extent of it; or the chances of avoiding it.'" *Gonzales*, 400 S.W.3d at 58 (quoting *Exxon Corp. v. Emerald Oil & Gas Co.*, 348 S.W.3d 194, 207 (Tex. 2011)). In *Rosenberg*, a Texas Court of Appeals found that a homeowner's TDTPA claim against a subcontractor for damages allegedly resulting from the subcontractor's faulty building of the house's foundation accrued on the date the homeowner should have discovered the subcontractor's wrongful act, rather than when the homeowner discovered the extent and cause of the foundation failure. *Rosenberg*, 95 S.W.3d at 331; *see Galindo v. Snoddy*, 415 S.W.3d 905, 910 (Tex. App. 2013) ("The discovery rule tolls the statute of limitations for fraudulent misrepresentations until the claimant discovers the falsity of the representations"); *Gonzales*, 400 S.W.3d at 57-58 (TDTPA claim accrues even if the claimant does not yet know the cause, responsible party, or the full extent of the injury).

In the Buschmans' counterclaim, they allege that they "learned of the poor health of their cattle" when Ryan Buschman traveled to Wahrmund's property after an alleged cattle theft (Dkt. No. 22, ¶ 5). This allegation goes to the heart of the Buschmans' TDTPA counterclaim; namely, that Wahrmund's poor performance demonstrates that he misrepresented his ability to care for the Buschmans' cattle. Following Ryan Buschman's trip, the Buschmans made no attempt to investigate the status of their cattle, even though they were aware that the cattle were in poor health. The Buschmans did not specify when Ryan Buschman visited the cattle farm; Wahrmund contends that the visit occurred in February 2015, "at the latest." (Dkt. No. 29, at 4). The Buschmans do not contest Wahrmund's assertion that the visit occurred in February 2015, so the Court accepts it as true for the purposes of this motion. After the cattle theft and Ryan Buschman's inspection of the cattle farm, the Buschmans are hard pressed to argue that they did not have enough information at their disposal to discover the alleged falsity of Wahrmund's representations or, in the exercise of reasonable diligence, could not have discovered Wahrmund's alleged wrongful acts or omissions. Thus, the Court finds that the TDTPA counterclaim accrued in February 2015, when the Buschmans learned of the poor health of their cattle. The counterclaim was filed on April 25, 2017, two months after the two-year statute of limitations ended. As such, even if Texas law applies, the Buschmans' TDTPA claim is time barred.

IV.     **Conclusion**

Arkansas law applies to the Buschmans' counterclaims. Even if the Court were to apply Texas law, the Buschmans' TDTPA claim would be barred by the statute of limitations. Therefore, the Buschmans' TDTPA claim is dismissed for failure to state a claim upon which relief may be granted. Wahrmund's motion to dismiss the Buschmans' TDTPA counterclaim is granted (Dkt. No. 28).

It is so ordered, this the 12th day of March, 2018.

                                                                                             Kristine G. Baker
                                                                                             United States District Judge